UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | |
|---|---|
| **OTNIEL ULLOA**, | : |
| Plaintiff, | : |
| | : Civil Action No.: |
| v. | : |
| | : **JURY TRIAL DEMANDED** |
| **INSTANT BRANDS INC.**, | : |
| Defendant. | : |

# COMPLAINT

Plaintiff, **OTNIEL ULLOA**, (hereafter referred to as "Plaintiff"), by and through his undersigned counsel, **JOHNSON BECKER, PLLC** and **BAILEY & GREER, PLLC**, hereby submits the following Complaint and Demand for Jury Trial against Defendant **INSTANT BRANDS, INC.** (hereafter referred to as "Defendant Instant Brands" and "Defendant"), alleges the following upon personal knowledge and belief, and investigation of counsel:

## NATURE OF THE CASE

1. Defendant Instant Brands designs, manufactures, markets, imports, distributes, and sells a wide range of consumer kitchen products, including the subject "Instant Pot Pro Crisp Multi-Use Pressure Cooker & Air Fryer," which specifically includes the Model Number Pro Crisp AF 8 (referred to hereafter as "pressure cooker(s)") that is at issue in this case.

2. Defendant touts the "safety"[1] of its pressure cookers, and states that the cookers cannot be opened while in use. Despite Defendant's claims of "safety," they designed, manufactured,

---

[1] *See*, e.g. Instant Pot Pro Crisp User Manual, pgs. 2, 17, and 25. A copy of the User Manual is attached hereto as "Exhibit A".

marketed, imported, distributed, and sold, both directly and through third-party retailers, a product that suffers from serious and dangerous defects. Said defects cause significant risk of bodily harm and injury to consumers.

3. Specifically, said defects manifest themselves when, despite Defendant's statements to the contrary, the lid of the pressure cooker is removable with built-up pressure, heat, and steam still inside the unit. When the lid is removed under such circumstances, the pressure trapped within the unit causes the scalding hot contents to be projected from the unit and into the surrounding area, including onto the unsuspecting consumers, their families and other bystanders. Here, Plaintiff was able to remove the lid while the pressure cooker retained pressure, causing him serious and substantial bodily injuries and damages, including catastrophic burn injuries.

4. Defendant knew or should have known of these defects, but has nevertheless put profit ahead of safety by continuing to sell its pressure cookers to consumers, failing to warn said consumers of the serious risks posed by the defects, and failing to recall the dangerously defective pressure cookers despite the risk of significant injuries to Plaintiff and consumers like him.

5. Defendant ignored and/or concealed its knowledge of these defects in its pressure cookers from Plaintiff in this case, as well as the public in general, in order to continue generating a profit from the sale of said pressure cookers, demonstrating a callous, reckless, willful, depraved indifference to the health, safety, and welfare of Plaintiff and others like him.

6. As a direct and proximate result of Defendant's conduct, the Plaintiff in this case incurred significant and painful bodily injuries, medical expenses, physical pain, mental anguish, and diminished enjoyment of life.

## PLAINTIFF OTNIEL ULLOA

7. Plaintiff is a resident and citizen of the City of Kingsport, County of Sullivan, State of Tennessee.

8. On or about March 13, 2021, Plaintiff purchased a new Instant Pot Pro Crisp Multi-Use Pressure Cooker & Air Fryer, Model Number Pro Crisp AF 8, from Amazon.com.

9. On or about August 6, 2021, Plaintiff suffered serious and substantial burn injuries as the direct and proximate result of the pressure cooker's lid being able to be rotated and opened while the pressure cooker was still under pressure, during the normal, directed use of the pressure cooker, allowing its scalding hot contents to be forcefully ejected from the pressure cooker and onto Plaintiff. The incident occurred as a result of the failure of the pressure cooker's supposed "safety mechanisms,"[2] which purport to keep the consumer safe while using the pressure cooker. In addition, the incident occurred as the result of Defendant's failure to redesign the pressure cooker, despite the existence of economical, safer alternative designs.

## DEFENDANT INSTANT BRANDS, INC.

10. Defendant designs, manufactures, markets, imports, distributes, and sells a variety of consumer kitchen products including, *inter alia*, pressure cookers, air fryers, and blenders.

11. Defendant boasts that "cooking with Instant Brands is everyday magic,"[3] and that its products are "all designed to simplify the joys of home cooking, promote healthy lifestyles, and give you more time to enjoy great meals with the people you love."[4]

---

[2] *Id.* at 2 and 25.
[3] *See* https://www.instanthome.com/about-us (last accessed July 19, 2022).
[4] *Id.*

12. Defendant Instant Brands is a Canadian corporation with its principal place of business at 495 March Road, Suite 200, Kanata, ON, Canada K2K 3G1, and as such is deemed to be a citizen of the Country of Canada.

**JURISDICTION AND VENUE**

13. This Court has subject matter jurisdiction over this case pursuant to diversity jurisdiction as prescribed by 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and there is complete diversity between the parties.

14. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because all or a substantial part of the events or omissions giving rise to this claim occurred in this district.

15. Venue is also proper in this Court pursuant to 28 U.S.C. § 1391 because Defendant has sufficient minimum contacts with the State of Tennessee and intentionally avails itself of the markets within Tennessee through the promotion, sale, marketing, and distribution of its products.

**FACTUAL BACKGROUND**

16. Defendant is engaged in the business of designing, manufacturing, warranting, marketing, importing, distributing, and selling the pressure cookers at issue in this litigation.

17. Defendant aggressively warrants, markets, advertises, and sells its pressure cookers as a quick, convenient, dependable, and safe means of cooking, asserting that their products are "a cultural phenomenon" and a "kitchen must-have."[5]

18. For instance, in the User's Manual included with each Instant Pot Pro Crisp sold, Defendant boasts "[a]t Instant Brands™ your safety always comes first. The Instant Pot Pro family was designed with your safety in mind, and we mean business."[6] Defendant goes on to instruct

---

[5] *Id.*
[6] Instant Pot Pro Crisp User's Manual, pg. 2.

consumers to visit its website for a "long list of safety mechanisms."[7]

19. According to Defendant's website, this "long list of safety mechanisms" includes the following:

    a. "**Safety Lid Lock** – When cooker is pressurized, the lid will automatically lock to prevent opening the cooker."[8]

    b. "**Lid Position Detection** – If the lid is not in a safe position for pressure cooking, the cooker will not allow cooking to begin."[9]

20. Defendant further represents in its User Manual that "[o]nce enough steam has built up [in the pressure cooker], the float valve pops up and locks the lid in place"[10] and that "[t]he lid is removable during non-pressure cooking" but it "locks into place" when the unit is pressurized.[11]

21. With the advent of the Instant Pot Pro Crisp, Defendant claims to have designed what Defendant describes as "our best ever lid."[12] Said lid purports to represent a "3-point lid upgrade, including advanced heat protection, auto-sealing, and gentle steam release technology."[13]

22. To further propagate its message, Defendant has used, and continues to utilize, numerous media outlets including, but not limited to, infomercials, social media websites such as YouTube, and third-party retailers. For example, the following can be found on Defendants' YouTube webpage for their IP-DUO series, entitled "Getting to Know Your New Instant Pot IP-DUO":

---

[7] *Id*.
[8] *See* https://www.instanthome.com/support/instant/resources (last accessed July 19, 2022).
[9] *Id*.
[10] Instant Pot Pro Crisp User's Manual, pg. 17.
[11] *Id*. at pg. 25.
[12] https://www.youtube.com/watch?v=0812PK9RlLk (video with a runtime of 2:02) at 1:22 – 1:24 (last accessed July 19, 2022).
[13] *See* https://www.instanthome.com/product/instant-pot/pro-crisp-8-quart-air-fryer-pressure-cooker (last accessed July 19, 2022).

a. "The first thing you need to know about your IP-DUO is that *you don't need to be afraid of it*, as many people are afraid of stovetop pressure cookers."[14]

b. "With 10 safety features built in, you can use your Instant Pot with confidence, *knowing that it is not going to explode*." [15]

23. In a similar video entitled "Introducing Instant Pot IP-DUO series electric pressure cooker," spokesperson Laura Pazzaglia, founder of the website "Hip Pressure Cooking"[16] boasts of the pressure cookers' "10 safety features," stating that this "new model detects the position of the lid" and "once the lid is locked, and the contents are under pressure, *there's no way to open the pressure cooker*." [17]

24. Defendant purports that the Instant Pot Pro Crisp also possesses these safety features, stating on their website that the Pro Crisp has "10+ proven safety features, including Overheat Protection ™ and safe locking."[18]

25. According to the User's Manual, the pressure cookers purport to be designed with consumer safety in mind, misleading the consumer into believing that the pressure cookers are reasonably safe for their normal, intended use.[19]

26. By reason of the forgoing acts or omissions, Plaintiff used the pressure cooker with the reasonable expectation that it was properly designed and manufactured, free from defects of any kind, and that it was safe for its intended, foreseeable use of cooking.

---

[14] https://www.youtube.com/watch?v=w1RKj9E8TY0 (video with a runtime of 11:26) at 0:42 – 0:46 (last accessed July 20, 2022)
[15] *Id.* at 0:47 – 0:55.
[16] *See* https://www.hippressurecooking.com/ (last accessed July 20, 2022)
[17] https://www.youtube.com/watch?v=bVA2EqPf0s0 (video with a runtime of 8:30) (last accessed July 20, 2022).
[18] *See* https://www.instanthome.com/product/instant-pot/pro-crisp-8-quart-air-fryer-pressure-cooker (last accessed July 19, 2022).
[19] Instant Pot Pro Crisp User's Manual, pg. 2.

27. Plaintiff used the pressure cooker for its intended purpose of preparing meals for himself and/or his family and did so in a manner that was reasonable and foreseeable by the Defendant.

28. However, the aforementioned pressure cooker was defectively and negligently designed and manufactured by the Defendant in that it failed to properly function as to prevent the lid from being removed with normal force while the unit remained pressurized, despite the appearance that all the pressure had been released, during the ordinary, foreseeable and proper use of cooking food with the product; placing the Plaintiff, his family, and similar consumers in danger while using the pressure cookers.

29. Defendant's pressure cookers possess defects that make them unreasonably dangerous for their intended use by consumers because the lid can be rotated and opened while the unit remains pressurized.

30. Further, Defendant's representations about "safety" are not just misleading, they are flatly wrong, and put innocent consumers like Plaintiff directly in harm's way.

31. Economic, safer alternative designs were available that could have prevented the pressure cooker's lid from being rotated and opened while pressurized.

32. Defendant knew or should have known that its pressure cookers possessed defects that pose a serious safety risk to Plaintiff and the public. Nevertheless, Defendant continues to ignore and/or conceal its knowledge of the pressure cookers' defects from the general public and continues to generate a substantial profit from the sale of their pressure cookers, demonstrating a callous, reckless, willful, depraved indifference to the health, safety and welfare of Plaintiff and others like him.

33. As a direct and proximate result of Defendant's intentional concealment of such defects, its failure to warn consumers of such defects, its negligent misrepresentations, its failure to remove

a product with such defects from the stream of commerce, and its negligent design of such products, Plaintiff used an unreasonably dangerous pressure cooker, which resulted in significant and painful bodily injuries upon the simple removal of the lid of the pressure cooker.

34. Consequently, the Plaintiff seeks compensatory damages resulting from the use of Defendant's pressure cooker as described above, which has caused the Plaintiff to suffer from serious bodily injuries, medical expenses, physical pain, mental anguish, diminished enjoyment of life, and other damages.

## CLAIMS FOR RELIEF

### COUNT I
### STRICT LIABILITY

35. Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

36. At the time of Plaintiff's injuries, Defendant's pressure cookers were defective and unreasonably dangerous for use by foreseeable consumers, including Plaintiff.

37. Defendant's pressure cookers were in the same or substantially similar condition as when they left the possession of the Defendant.

38. Plaintiff and his family did not misuse or materially alter the pressure cooker.

39. The pressure cookers did not perform as safely as an ordinary consumer would have expected them to perform when used in a reasonably foreseeable way.

40. Further, a reasonable person would conclude that the possibility and risk of serious harm outweigh the burden or cost of making the pressure cookers safe. Specifically:

a. The pressure cookers designed, manufactured, sold, and supplied by Defendant were defectively designed and placed into the stream of commerce in a defective and unreasonably dangerous condition for consumers;

b. The seriousness of the potential burn injuries resulting from the product drastically outweigh any benefit that could be derived from its normal, intended use;

c. Defendant failed to properly market, design, manufacture, distribute, supply, and sell the pressure cookers, despite having extensive knowledge that the aforementioned injuries could and did occur;

d. Defendant failed to warn and place adequate warnings and instructions on the pressure cookers;

e. Defendant failed to adequately test the pressure cookers; and

f. Defendant failed to market an economically feasible alternative design, despite the existence of economical, safer alternatives, that could have prevented the Plaintiffs' injuries and damages.

41. Defendant's actions and omissions were the direct and proximate cause of Plaintiff's injuries and damages.

42. Defendant's conduct, as described above, was extreme and outrageous. Defendant risked the safety and well-being of the consumers and users of its pressure cookers, including the Plaintiff to this action, while possessing the knowledge of the safety and efficacy problems, and suppressed this knowledge from the public. Defendant made conscious decisions not to redesign, warn, or inform the unsuspecting consuming public. Defendant's outrageous conduct warrants an award of punitive damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT II
## NEGLIGENCE

43. Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

44. Defendant had a duty of reasonable care to design, manufacture, market, and sell non-defective pressure cookers that are reasonably safe for their intended uses by consumers, such as Plaintiff and his family.

45. Defendant failed to exercise ordinary care in the manufacture, sale, warnings, quality assurance, quality control, distribution, advertising, promotion, sale and marketing of its pressure cookers in that Defendant knew or should have known that said pressure cookers created a high risk of unreasonable harm to the Plaintiff and consumers alike.

46. Defendant was negligent in the design, manufacture, advertising, warning, marketing, and sale of its pressure cookers in that, among other things, it:

   a. Failed to use due care in designing and manufacturing the pressure cookers to avoid the aforementioned risks to individuals;

   b. Placed an unsafe product into the stream of commerce;

   c. Aggressively over-promoted and marketed its pressure cookers through television, social media, and other advertising outlets; and

   d. Was otherwise careless or negligent.

47. Despite the fact that Defendant knew or should have known that consumers were able to remove the lid while the pressure cookers were still pressurized, Defendant continued to market its pressure cookers to the general public (and continues to do so).

48. Defendant's conduct, as described above, was extreme and outrageous. Defendant risked the safety and well-being of the consumers and users of its pressure cookers, including the Plaintiff to this action, while possessing the knowledge of the safety and efficacy problems, and suppressed this knowledge from the public. Defendant made conscious decisions not to redesign, warn or inform the unsuspecting consuming public. Defendant's outrageous conduct warrants an award of punitive damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT III
## BREACH OF EXPRESS WARRANTY

49. Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

50. Defendant expressly warranted that its pressure cookers were safe and effective to members of the consuming public, including Plaintiff and his family. Moreover, Defendant expressly warranted that the lid of the Pressure Cooker could not be removed while the unit remained pressurized. Specifically:

    a. "Once enough steam has built up, the float valve pops up and locks the lid in place."[20]

---

[20] *Id.* at pg. 17.

11

Case 2:22-cv-00084-TAV-CRW    Document 1    Filed 07/21/22    Page 11 of 18    PageID #: 11

b. "The lid is removable during non-pressure cooking so you can taste-test as you go. When pressure cooking, the lid only locks into place once the multicooker has pressurized."[21]

c. "**Safety Lid Lock –** When cooker is pressurized, the lid will automatically lock to prevent opening the cooker."[22]

d. "**Lid Position Detection –** If the lid is not in a safe position for pressure cooking, the cooker will not allow cooking to begin."[23]

51. Members of the consuming public, including consumers such as the Plaintiff, were the intended third-party beneficiaries of the warranty.

52. Defendant marketed, promoted, and sold its pressure cookers as a safe product, complete with "safety mechanisms."

53. Defendant's pressure cookers do not conform to these express representations because the lid can be removed using normal force while the units remain pressurized, despite the appearance that the pressure has been released, making the pressure cookers not safe for use by consumers.

54. Defendant breached its express warranties in one or more of the following ways:

a. The pressure cookers as designed, manufactured, sold and/or supplied by the Defendant, were defectively designed, and placed into the stream of commerce by Defendant in a defective and unreasonably dangerous condition;

b. Defendant failed to warn and/or place adequate warnings and instructions on their pressure cookers;

c. Defendant failed to adequately test its pressure cookers; and

---

[21] *Id.* at pg. 25.
[22] *See* https://www.instanthome.com/support/instant/resources (last accessed July 19, 2022).
[23] *Id*.

12

d. Defendant failed to provide timely and adequate post-marketing warnings and instructions after they knew the risk of injury from their pressure cookers.

55. Plaintiff used the pressure cooker with the reasonable expectation that it was properly designed and manufactured, free from defects of any kind, and that it was safe for its intended, foreseeable use of cooking.

56. Plaintiff's injuries were the direct and proximate result of Defendant's breach of its express warranties.

57. Defendant's conduct, as described above, was extreme and outrageous. Defendant risked the safety and well-being of the consumers and users of its pressure cookers, including the Plaintiff to this action, while possessing the knowledge of the safety and efficacy problems, and suppressed this knowledge from the public. Defendant made conscious decisions not to redesign, warn or inform the unsuspecting consuming public. Defendant's outrageous conduct warrants an award of punitive damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT IV
## BREACH OF IMPLIED WARRANTY OF FITNESS FOR A PARTICULAR PURPOSE

58. Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

59. Defendant manufactured, supplied, and sold its pressure cookers with an implied warranty that they were fit for the particular purpose of cooking quickly, efficiently, and safely.

60. Members of the consuming public, including consumers such as Plaintiff, were the intended third-party beneficiaries of the warranty.

13

61. Defendant's pressure cookers were not fit for their particular purpose as a safe means of cooking, due to the unreasonable risks of bodily injury associated with their use.

62. The Plaintiff and/or Plaintiff's family reasonably relied on Defendant's representations that its pressure cookers were a quick, effective, and safe means of cooking.

63. Defendant's breach of the implied warranty of fitness for a particular purpose was the direct and proximate cause of Plaintiff's injuries and damages.

64. Defendant's conduct, as described above, was extreme and outrageous. Defendant risked the safety and well-being of the consumers and users of their pressure cookers, including the Plaintiff to this action, while possessing the knowledge of the safety and efficacy problems, and suppressed this knowledge from the public. Defendant made conscious decisions not to redesign, warn or inform the unsuspecting consuming public. Defendant's outrageous conduct warrants an award of punitive damages.

**WHEREFORE,** Plaintiff demands judgment against Defendant for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

### COUNT V
### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

65. Plaintiff incorporates by reference each preceding and succeeding paragraph as though set forth fully at length herein.

66. At the time Defendant marketed, distributed, and sold their pressure cookers to the Plaintiff in this case, Defendant warranted that its pressure cookers were merchantable and fit for the ordinary purposes for which they were intended.

67. Members of the consuming public, including consumers such as the Plaintiff, were the intended third-party beneficiaries of the warranty.

14

68. Defendant's pressure cookers were not merchantable because they had the propensity to lead to the serious personal injuries as described herein in this Complaint.

69. Plaintiff and/or Plaintiff's family used the pressure cooker with the reasonable expectation that it was properly designed and manufactured, free from defects of any kind, and that it was safe for its intended, foreseeable use of cooking.

70. Defendant's breach of the implied warranty of merchantability was the direct and proximate cause of Plaintiff's injury and damages

71. Defendant's conduct, as described above, was extreme and outrageous. Defendant risked the safety and well-being of the consumers and users of their pressure cookers, including the Plaintiff to this action, while possessing the knowledge of the safety and efficacy problems, and suppressed this knowledge from the public. Defendant made conscious decisions not to redesign, warn or inform the unsuspecting consuming public. Defendant's outrageous conduct warrants an award of punitive damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## COUNT VI
## PUNITIVE DAMAGES

72. Plaintiff incorporates by reference each of the allegations set forth in this Complaint as though fully set forth herein.

73. The acts, conduct, and omissions of Defendant, as alleged throughout this Complaint, were willful and malicious. It is unconscionable and outrageous that Defendant would risk the health, safety, and well-being of consumers, including the Plaintiff in this case. Despite their knowledge that the lid could be prematurely removed while the unit remained pressurized, Defendant made a

15

Case 2:22-cv-00084-TAV-CRW   Document 1   Filed 07/21/22   Page 15 of 18   PageID #: 15

conscious decision not to redesign, despite the existence of an economically feasible, safer alternative design, and not to adequately label, warn or inform the unsuspecting consuming public about the dangers associated with the use of its pressure cookers. Defendant's outrageous conduct rises to the level that Plaintiffs should be awarded punitive damages to deter Defendant from this type of outrageous conduct in the future, as well as to discourage other Defendants from placing profits above the safety of consumers in the United States of America.

74. Prior to and during the manufacturing, sale, and distribution of its pressure cookers, Defendant knew that said pressure cookers were in a defective condition as previously described herein, and knew that those who purchased and used their pressure cookers, including Plaintiff, could experience severe physical, mental, and emotional injuries.

75. Further, Defendant knew that its pressure cookers presented a substantial and unreasonable risk of harm to the public, including Plaintiff, and as such, Defendant unreasonably subjected consumers of said pressure cookers to risk of serious and permanent injury from their use.

76. Despite this knowledge, Defendant, for the purpose of enhancing its profits, knowingly and deliberately failed to remedy the known defects in its pressure cookers, and failed to warn the public, including Plaintiff, of the extreme risk of injury occasioned by said defects inherent in them. Defendant intentionally proceeded with the manufacturing, sale, distribution and marketing of its pressure cookers knowing these actions would expose consumers, such as Plaintiff, to serious danger in order to advance its pecuniary interest and monetary profits.

77. Defendant's conduct was despicable and so contemptible that it would be looked down upon and despised by ordinary decent people and was carried on by Defendant with willful and conscious disregard for the safety of the Plaintiff, his family, and consumers like him, entitling the Plaintiff to punitive damages.

**WHEREFORE**, Plaintiff demands judgment against Defendant for compensatory and punitive damages, together with interest, costs of suit, attorneys' fees, and all such other relief as the Court deems proper.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against the Defendant for damages, including exemplary damages if applicable, to which he is entitled by law, as well as all costs of this action, interest and attorneys' fees, to the full extent of the law, whether arising under the common law and/or statutory law, including:

a. judgment for Plaintiff and against Defendant;

b. damages to compensate Plaintiff for his injuries, economic losses and pain and suffering sustained as a result of the use of the Defendant's pressure cooker;

c. pre and post judgment interest at the lawful rate;

d. exemplary, punitive, and treble damages on all applicable Counts as permitted by the law;

e. a trial by jury on all issues of the case;

f. an award of attorneys' fees; and

g. for any other relief as this Court may deem equitable and just, or that may be available under the law of another forum to the extent the law of another forum is applied, including but not limited to all reliefs prayed for in this Complaint and in the foregoing Prayer for Relief.

Respectfully Submitted,

Dated: July 22, 2022

**BAILEY & GREER, PLLC**

/s/ Thomas R. Greer
Thomas R. Greer (#24452)
6256 Poplar Avenue
Memphis, TN 38119
Phone: (901) 680-9777
Fax: (901) 680-0580
tgreer@baileygreer.com

*In association with:*

Adam J. Kress, Esq.  (MN ID #0397289)
*Pro Hac Vice to be filed*
444 Cedar Street, Suite 1800
St. Paul, MN 55101
Phone: (612) 436-1800
Fax: (612) 436-1801
akress@johnsonbecker.com

*Attorneys for Plaintiffs*